IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Gary Washington,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Continental Tire the Americas, LLC,<br><br>　　　　　　　　Defendant. | C/A No. 3:20-cv-04056-MGL-SVH |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Defendant Continental Tire the Americas, LLC ("Defendant" or "Continental"), by counsel, states as follows in support of its Motion for Summary Judgment:

**Statement of the Case & Summary of Argument**

Plaintiff Gary Washington ("Plaintiff" or "Washington") is a former employee of Continental whose employment terminated in April 2019 for repeated, unexcused absences. Washington's employment terminated after he failed to return to work when he told Continental management that he would, many days after he exhausted his paid bereavement leave pursuant to Continental's policy. On November 20, 2020,[1] Washington initiated this action.

---

[1] Pursuant to Fed. R. Civ. P. 15(a)(1), Plaintiff filed an Amended Complaint with this Court on January 27, 2021, once as a matter of course, and on February 1, 2021, requested that Continental waive service of process. Subsequently, in response to Defendant's Motion to Dismiss his interference claim arising under the Family and Medical Leave Act ("FMLA"), Plaintiff sought relief from the Court to file his Second Amended Complaint which, among pleading additional facts, substituted an FMLA retaliation claim for the FMLA interference claim that he initially asserted.

1

In his Second Amended Complaint (the "Complaint"), Washington asserts a claim for age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), as well as a claim for retaliation under the FMLA. As demonstrated below, Washington cannot sustain either his FMLA or ADEA claim.

As a threshold issue, Washington is judicially estopped from asserting his ADEA and FMLA claims against Continental in this lawsuit, because he failed to disclose the claims in his bankruptcy proceedings. On this ground alone, his claims are subject to dismissal.

Further, there is no genuine dispute that Washington's utilization of time off to care for his mother during her illness or his age did *not* play a role in the decision to terminate his employment. As to his FMLA claim, Washington testified in his deposition that no one at Continental took any action against him in retaliation for taking time off to care for his mother during her illness. Rather, he was granted the time off to care for his mother during her illness, received three days of paid bereavement leave after her passing pursuant to Continental policy, and was thereafter not entitled to any additional leave under the FMLA or Continental policy for his mother's death. Despite being advised by a supervisor to contact Human Resources if he needed additional time away from work, Washington chose not to do so and instead accumulated six (6) unexcused absences in a period of only ten (10) days *after* he exhausted his bereavement leave and chose not to return to work on the date certain that he had specified to Continental management.

As to his ADEA claim, Washington offers only speculation that younger employees were treated differently than he was, only his unsupported belief that he was replaced by a younger employee upon his termination, and only a handful of stray remarks by someone who had absolutely nothing to do with the decision to terminate his employment and who, in fact, is *several years older* than Washington. None of this is sufficient to establish his age discrimination claim.

In short, Washington's termination had nothing to do with his age or any rights purportedly exercised under the FMLA and everything to do with his failure to return to work and related unexcused absences. Accordingly, for these reasons, which are described more fully below, Continental requests the Court enter an Order granting Defendant's Motion for Summary Judgment and dismissing Washington's Second Amended Complaint with prejudice.

## Statement of Material Facts

1.    Washington first provided services to Continental at Continental's tire production plant in Sumter, South Carolina (the "Sumter Plant") beginning in June 2017 as a temporary employee staffed through a third-party entity, Norman Williams & Associates, Inc. *See* Deposition of Gary Washington ("Pl.'s Dep."), at 25:21–26:5, 28:2–7, attached as Exhibit A; Declaration of Nicole Kosinski ("Kosinski Decl."), at ¶ 8, attached as Exhibit B.

2.    During his time as a temporary employee, Washington became certified as a Tire Build Operator. Kosinski Decl., at ¶ 8. Washington was thereafter offered full-time employment with Continental as a Tire Build Operator effective January 29, 2018. Pl.'s Dep. 31:22–32:3. At the time of Washington's hire as a full-time Tire Build Operator at Continental's Sumter Plant, Clayton Tucker was the Tire Build Department Manager at the Sumter Plant. Kosinski Decl., at ¶ 8.

3.    At all times relevant, Washington worked at Continental's Sumter Plant. Pl.'s Dep. 33:2–5.

4.    During Washington's full-time employment, he reported to Oscar Boyles until approximately April 2019, when Mr. Boyles assumed a new role at the Sumter Plant. Pl.'s Dep. 36:4–36:13; Kosinski Decl., at ¶ 9. At that time, Washington began reporting to John Stein. Pl.'s

Dep. 38:9–11; Kosinski Decl., at ¶ 9.    In April 2019, both Mr. Boyles and Mr. Stein reported to Mr. Tucker.  Kosinski Decl., at ¶ 9.

5.    According to Continental's records, at the time of Washington's termination, Mr. Boyles was 41 years old; Human Resources Manager (then Human Resources Business Partner) at the Sumter Plant, Nicole Kosinski, was 42 years old; Mr. Tucker was 51 years old; and Mr. Stein was 59 years old.  Kosinski Decl., at ¶¶ 1, 10.

**I.    Relevant Continental Employment Policies.**

6.    Continental maintains various employment related policies applicable to employees at the Sumter Plant. Kosinski Decl., at ¶ 12.

7.    Washington became aware of Continental's employment policies during his onboarding process as a new Continental employee.  Pl.'s Dep. 35:11–24, Ex. 3.  The policies were likewise available for employees like Washington to view at any point on Continental's intranet system or in person by visiting one of the available Human Resources Business Partners or Human Resources Coordinators at the Sumter Plant. Kosinski Decl., at ¶ 13.

8.    On January 30, 2018, Washington signed an acknowledgment of Continental's policies.  Pl.'s Dep. 35:11–24, Ex. 3; Kosinski Decl., at ¶ 11, Ex. 1.  With his signature, Washington agreed to familiarize himself with all Continental polices and agreed to comply with them. *Id.*

**A.    Continental's Attendance Policy.**

9.    Continental maintains an attendance policy for its employees at the Sumter plant. Kosinski Decl., at ¶ 12, Ex. 2(a).  The attendance policy provides, in relevant part, that employees must call in to report any absence.  Kosinski Decl. at Ex. 2(a).  The Sumter Plant uses a designated number for absence reporting: 803-720-5377. *Id.* at ¶ 23.

10.     If the reported absence is not excused (*i.e.* paid time off, bereavement leave, FMLA), the absence is considered a "call, no show" and results in the accrual of one absence point. Kosinski Decl., at Ex. 2(a).  If any employee is absent for up to three consecutive days for the same reason, the employee will only accrue one absence point as long as he calls in each day of the absence and states the reason for being absent.  *Id.*

11.     If the employee does not call to report the absence or reports it less than one hour prior to the start of the scheduled shift, the absence is considered a "no call, no show" (sometimes also referred to in Continental records as a "no report unpaid") and results in the assessment of two absence points.  *Id.* at Ex. 2(a).

12.     An accumulation of six absence points *or* six unexcused absences within any rolling 12-month period can result in the employee's discharge.  *Id.* (emphasis added).

**B.     Continental's Bereavement Leave Policy.**

13.     Continental also maintains a bereavement leave policy applicable to employees at the Sumter Plant.  Kosinski Decl., at ¶ 12, Ex. 2(b).  The bereavement policy provides, in relevant part, that the Company will provide employees up to three days of paid time off in the event of the death of a parent.   *Id*. at Ex. 2(b).

**C.     Continental's FMLA Policy.**

14.     Continental also maintains a FMLA policy applicable to employees at the Sumter Plant.  Kosinski Decl., at ¶ 12, Ex. 2(c).  Pursuant to Continental's FMLA policy, eligible employees are entitled to take leave, up to a maximum of twelve (12) weeks per calendar year, for conditions that qualify under the FMLA—including, as relevant here, to care for a parent with a serious health condition.  *Id.* at Ex. 2(c).  When the leave is foreseeable, employees must provide 30 days advance written notice of the need for leave (or, as soon as practicable) and must also

follow the Company's standard notification procedures (*i.e.*, calling into the specified absence reporting number). *Id.* Additionally, the employee must complete and submit a written request for FMLA leave and, for leave related to a serious health condition of a parent or spouse, must provide a physician certification issued by the health care provider of the employee's parent or spouse. *Id.*

15.     Washington became familiar with Continental's FMLA policy when he applied for intermittent leave pursuant to the FMLA policy in December 2018 to care for his wife's serious health condition. Pl.'s Dep. 43:4–46:25, Ex. 8 & 9. Washington received the necessary forms from Human Resources, completed them, and returned them to Human Resources. Pl.'s Dep. 47:23–48:23; 50:23–52:19. Washington's FMLA request was approved by Continental on January 7, 2019 and Washington thereafter commenced intermittent leave for the need to care for his wife. Pl.'s Dep. 53:12–16, Ex. 10.

## II.    Washington's Time Off to Care for His Mother.

16.     Shortly after his FMLA request for his wife was approved, Washington informed his supervisor, Oscar Boyles, that his mother was ill. Pl.'s Dep. Ex. 12. At some time prior to his last day of work on April 1, 2019, Washington also informed John Stein, in a face-to-face conversation, of his mother's illness and that he needed time off. Pl.'s Dep. 111:20–112:14.

17.     Despite having just gone through the FMLA process to obtain leave to care for his wife, Washington did not mention any need for FMLA leave to Mr. Stein or Mr. Boyles, nor did he request or complete any FMLA paperwork, as he had done for time off to care for his wife. Pl.'s Dep. 48:24–49:5, 52:14–19, 80:21–81:15, 116:23–117:16.

18.     Nonetheless, Mr. Boyles and Mr. Stein approved Washington's absences for the duration of his mother's illness. Pl.'s Dep. 113:3–5, 19–24.

### III.    Washington's Mother's Passing and His Bereavement Leave.

19.    Washington last reported to work at Continental's Sumter Plant on April 1, 2019. Kosinski Decl., at ¶ 16.

20.    On April 10, 2019, Washington's mother passed away.  Pl.'s Dep. 62:1–6.  Two days after his mother's death, on April 12, 2019, Washington informed Mr. Boyles of her passing. Pl.'s Dep. 72:16–22, Ex. 12.  Mr. Boyles responded: "I'm sorry to hear this news.  Just as soon as you all make plans, just let me know and we can go from there."  Pl.'s Dep. 74:2–14, Ex. 12. Mr. Boyles also told Washington by telephone that he was praying for Washington's family.  Pl.'s Dep. 74:15–75:3.  Washington did not speak directly with Mr. Stein about his mother's passing. Pl.'s Dep. 73:4–74:1.

21.    Pursuant to Continental's Bereavement Leave Policy, the first three days that Washington was absent from work following his mother's death—April 12, 13, and 14—were excused, paid absences.  Kosinski Decl., ¶ 18, Ex. 4.  He did not accumulate any absence points under Continental's attendance policy for these absences. *Id.*

### IV.    Washington's Subsequent Repeated, Excessive, Unexcused Absenteeism and Termination of Employment.

22.    Washington exhausted his bereavement leave on April 14, 2019.  Kosinski Decl., at ¶ 19.

23.    After Washington exhausted his three days of bereavement leave on April 14, 2019, he was thereafter absent from work on April 15, 19, 20, 21, 23, and 24.  Kosinski Decl., ¶ 21, Ex. 4.  No one excused any of these absences (such that Washington would not be assessed an absence point), Pl.'s Dep. 110:25–111:5, and Washington did not reach out to either Human Resources or Clayton Tucker to address any need for an extended leave or to ask whether any additional absences from work could be excused.  Pl.'s Dep. 81:22–25; Kosinski Decl., at ¶ 20.

24.     Washington texted Mr. Boyles on April 19, 2019 telling him that his mother's funeral was complete and that he would return to work on April 23, 2019—that is, 13 days after his mother's death and 22 days after Washington had last worked.  Pl.'s Dep. 78:24–79:4, Ex. 12, 14.  In response, Mr. Boyles informed Washington that Washington would need to contact Human Resources and Clayton Tucker to address any absences that exceeded Washington's bereavement leave allotment.  Pl.'s Dep. 79:9–16, Ex. 14.  Washington responded by thanking him and reiterated to Mr. Boyles that ***he would be at work on April 23, 2019 after class***.[2]  Pl.'s Dep. 79:17–25, Ex. 12, 14 (emphasis added).

25.     Washington did not return to work on April 23, 2019 as he reported he would to Mr. Boyles, or any day thereafter.  Pl.'s Dep. 75:4–7, 85:19–86:12; Kosinski Decl., ¶ 16, Ex. 4.  Washington also did not contact Mr. Boyles regarding any further absences.  Pl.'s Dep. Ex. 14.  His last communication to Mr. Boyles was a text message on April 27, 2019, stating "Hey Oscar, thanks for everything. John 3:16-18".  Pl.'s Dep. Ex. 14.

26.     For some of his absences following his exhaustion of his bereavement leave allotment pursuant to Continental policy on April 14, 2019 Washington called in to the Sumter Plant's absence reporting line to report the absence.  For some, he did not.  Pursuant to Continental's attendance policy, Washington's work schedule for April 2019, and as reflected in Exhibit 4 to the Kosinski Declaration, Washington's absences through and following the exhaustion of his bereavement leave were coded as follows and absence points were assessed as follows:

---

[2] When asked at his deposition to what class he was referring in his message to Mr. Boyles, Plaintiff stated that he was either attending classes at Morris College or his "***drone class***" during his period of absences from work at Continental.  Pl.'s Dep. 82:5–22 (emphasis added).

| Scheduled Work Day | Absence Coding | Absence Points Assessed |
|---|---|---|
| 4/12/2019 | Bereavement Leave | 0 points |
| 4/13/2019 | Bereavement Leave | 0 points |
| 4/14/2019 | Bereavement Leave | 0 points |
| 4/15/2019 | Call, No Show | 1 point |
| 4/19/2019 | Call, No Show | 1 point |
| 4/20/2019 | Call, No Show | 0 points (pursuant to Continental's Attendance Policy, if the employee is out for up to 3 days for the same reason and calls each day to report the absence, only 1 point will be assessed for all 3 days) |
| 4/21/2019 | Call, No Show | 0 points (pursuant to Continental's Attendance Policy, if the employee is out for up to 3 days for the same reason and calls each day to report the absence, only 1 point will be assessed for all 3 days) |
| 4/23/2019 | No call, no show | 2 points |
| 4/24/2019 | No call, no show | 2 points |

*See* Kosinski Decl. at ¶ 22, Ex. 2(a) (Continental's Attendance Policy); Ex. 3 (Washington's April 2019 Work Schedule); and Ex. 4 (Washington's Absence Report).

27.   As noted in the above chart and as reflected in Washington's Absence Report, Washington accumulated six absence points and six unexcused absences as of April 24, 2019. *See* Kosinski Decl. at ¶ 24, Ex. 4. Pursuant to Continental's attendance policy, Washington's accumulation of six absence points and six unexcused absences are terminable offenses. *See* Kosinski Decl., at ¶ 24, Ex. 2(a).

28.   Because Washington did not return to work after he told Mr. Boyles that he would return on April 23, 2019 and had not indicated if or when he planned to return, Mr. Tucker and Ms. Kosinski, then Human Resources Business Partner at the Sumter Plant, believed that Washington had no intention of returning to work and had abandoned his job. Kosinski Decl., at

¶ 26.   Accordingly, and in light of Washington's accumulation of six absence points and six unexcused absences under Continental's attendance policy as of April 24, 2019, Mr. Tucker and Ms. Kosinski made the decision to terminate Washington's employment.  *Id.*  In calculating the accumulation of absence points and unexcused absences, Washington's bereavement leave (pursuant to Continental policy) was not considered, nor was any other absence in April 2019 prior to his bereavement leave.  *Id.*

30.     Ms. Kosinski and Mr. Tucker did not consult or otherwise speak with Mr. Stein regarding the decision to terminate Washington's employment, nor was Mr. Stein involved in the communication of the termination to Washington.  *Id.*

30.     At some point on or after April 24, 2019, Mr. Tucker connected with Mr. Washington by phone and advised him that his employment with Continental terminated.  Pl.'s Dep. 177:4–6, 10–12, 177:25–178:8; Kosinski Decl., at ¶ 27.  Washington was 56 years old at the time his employment with Continental terminated. *See* Pl.'s Dep. 10:20–22.

**V.     Continental Hires Additional Tire Build Operators in the Ordinary Course of its Business.**

31.     Continental is in the business of manufacturing tires at its Sumter Plant and Tire Build Operators are essential to its business.  Kosinski Decl., at ¶ 29.  Thus, Continental regularly has job openings for Tire Build Operators and maintains a job posting for the role that is continually posted such that applicants can apply for the position at any time.  *Id.*  Therefore, at the time of Washington's termination in April 2019, a Tire Build Operator job posting was already posted and was not posted as a result of Washington's separation or to recruit anyone to replace Washington.  *Id.*  at ¶ 30.

32.    In response to that job posting, Continental hired six (6) Tire Build Operators.  *See id.* at ¶ 31. Three of these individuals started with Continental in June 2019, two in July 2019, and one in August 2019.  *Id.* at ¶ 32.

33.    Therefore, after Washington's employment terminated in April 2019, no one person was hired or engaged to "replace" him.  Kosinski Decl., at ¶ 28.

## Legal Standard

Summary judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted).  Courts have an "obligation . . . to prevent 'factually unsupported claims' . . . from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).  The party who bears the burden of proof on a crucial issue at trial, such as Washington in the instant case, cannot survive summary judgment without sufficient evidence to sustain his burden of proof on that point.  *See Celotex*, 477 U.S. at 327.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact, as identified by the substantive law, is one "that might affect the outcome of the suit . . . ."  *Id.*  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

Washington's unsupported speculation, conclusory statements, and self-serving assertions are not sufficient to defeat a motion for summary judgment. *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996).  Further, Washington "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  Likewise, the "mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which

the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

252 (1986).

To survive a motion for summary judgment, the non-moving party cannot solely rely upon

his pleadings. *Celotex*, 477 U.S. at 324. Rather, he must demonstrate that specific material facts

exist that give rise to a genuine issue. *Id.* Accordingly, where "a party . . . fails to make a showing

sufficient to establish the existence of an element essential to the party's case, and on which that

party will bear the burden of proof at trial[,]" summary judgment is mandated. *Id.* at 322.

<u>Argument</u>

I.    **Washington's Claims are Barred by Judicial Estoppel and Summary Judgment
      Should Be Granted.**

Washington is estopped from bringing his claims against Continental because he failed to

disclose his Charge of Discrimination filed with the Equal Employment Opportunity Commission

("EEOC") precipitating the claims in this lawsuit or his contemplated FMLA claim arising from

his termination in his Chapter 13 bankruptcy petition that he filed in the United States Bankruptcy

Court for the District of South Carolina, Petition No. 16-02667-jw, on May 30, 2016 (the

"Petition").[3]

"[J]udicial estoppel is an equitable doctrine, designed to protect the integrity of the judicial

process by prohibiting parties from deliberately changing positions according to the exigencies of

the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S. Ct. 1808 (2001).[4] A debtor

---

[3] This Court can take judicial notice of the Petition and the filings contained therein in
Washington's Chapter 13 bankruptcy proceeding. *See, e.g., Colonial Penn Ins. Co. v. Coil*, 887
F.2d 1236, 1239 (4th Cir. 1989) ("We note that '[t]he most frequent use of judicial notice of
ascertainable facts is in noticing the content of court records.'") (citation omitted).

[4] When asked to identify other lawsuits in which he has been a plaintiff at his deposition,
Washington did not identify his bankruptcy proceeding, nor did he disclose the lawsuit that he

who fails to disclose an asset, including a legal claim, cannot realize on that concealed asset after the bankruptcy ends. Assets subject to required disclosure are broadly defined and include Charges of Discrimination filed with the EEOC, or "even the underlying facts that might support a discrimination claim." *Robertson v. Flowers Baking Co. of Lynchburg, LLC*, 2012 U.S. Dist. LEXIS 29854, at *3 (W.D. Va. Mar. 6, 2012); *see also Thomas v. Palmetto Mgmt. Servs.,* 2006 U.S. Dist. LEXIS 101666, at *8 (D.S.C. Aug. 3, 2006) (recommending application of judicial estoppel and grant of summary judgment in favor of employer where plaintiff failed to disclose an EEOC charge filed subsequent to her bankruptcy petition), *R&R adopted,* 2006 U.S. Dist. LEXIS 64770, at *3 (D.S.C. Sept. 11, 2006), *aff'd* 234 Fed. App'x 166 (4th Cir. 2007); *Vanderheyden v. Peninsula Airport Comm'n*, 2013 U.S. Dist. LEXIS 399, at *48–49 (E.D. Va. Jan. 2, 2013) (applying judicial estoppel where plaintiff failed to disclose the EEOC charge to the bankruptcy court, as she had knowledge of the claim "during the pendency of her bankruptcy action").

Further, the duty to disclose all assets, or potential assets, in a bankruptcy petition is a continuing one. *See* 11 U.S.C. § 1306(a)(1); *Thomas,* 2006 U.S. Dist. LEXIS 101666, at *8–9 ("The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change."). Therefore, failure to amend a bankruptcy petition when a claim becomes known is sufficient to bar the debtor from bringing the claim in a later proceeding. *See Thomas,* 2006 U.S. Dist. LEXIS

---

listed on the Schedules in his Petition. *See* Pl.'s Dep. 17:23–19:20; *In re Washington*, Dkt. No. 18, page 8, item 33; *see also infra,* page 14. But, subsequent to his deposition he curiously sought to place blame on Continental for his need to initiate his earlier bankruptcy proceeding. *See* Declaration of Meredith A. Pinson in Support of Defendant's Motion for Protective Order, Dkt. No. 61-2, at ¶ 13 and Exhibit 5 thereto (Dkt. No. 61-7). This only further confirms Washington's ever-shifting and inconsistent positions as may benefit him in the moment.

101666, at *8–9 (recommending application of judicial estoppel where plaintiff filed an EEOC Charge after filing her bankruptcy petition and never amended her filings to reflect the claim).

Courts typically look at several factors when considering whether a party is estopped from asserting a claim, including whether:  (1) the party to be estopped is advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position is one of fact instead of law; (3) the prior position was accepted by the court in the first proceeding; and (4) the party to be estopped acted intentionally, not inadvertently. *Folio v. City of Clarksburg*, 134 F.3d 1211, 1217–18 (4th Cir. 1998).

Washington's assertions in the instant action that he has viable claims against Continental are clearly inconsistent with the position taken in his bankruptcy proceeding—that is, that he had no such claims constituting assets. *In re Washington,* Dkt. No. 18, page 8, item 33.  On June 13, 2016, Washington filed the schedules to accompany his Petition, outlining his assets and debts, and signed the schedules under penalty of perjury. *Id.* at Dkt. No. 18 (the "Schedules"). Washington was well-aware of his duty to disclose legal claims on his Schedules, as he was represented by counsel and in fact disclosed a different lawsuit on the Schedules in response to the request to list any "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment." *Id.* at Dkt. No. 18, page 8, item 33.  *See Pappacoda v. Palmetto Health*, 2014 U.S. Dist. LEXIS 125881, at *7–8 (D.S.C. Sept. 8, 2014) (stating that courts hold debtors and parties liable for actions or inactions of counsel).

Further, Washington was aware that his duty to disclose was ongoing.  Indeed, he submitted three amendments to his Petition and Schedules after its initial filing—on October 4, 2016, December 1, 2016, and December 15, 2016. *In re Washington,* Dkt. Nos. 48, 71, 77.  But, he never amended his Schedules to include his claims against Continental as potential assets, even after his

termination from Continental in April 2019 or after he filed his EEOC Charge against Continental on October 15, 2019, all of which occurred while the Petition was pending.   Pl.'s Dep. 105:3–106:18, Ex. 20.

Though Washington's bankruptcy proceeding was ultimately dismissed on October 6, 2020 for non-compliance prior to a full discharge of his debts, s*ee In re Washington*, Dkt. No. 197, estoppel remains appropriate here.  *See Brockington v. Jones*, 2007 U.S. Dist. LEXIS 96248, at *11 (D.S.C. Nov. 28, 2007) (stating that the court's confirmation of a bankruptcy plan can satisfy the "acceptance" element of the judicial estoppel test) (citing *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)); *In re Family Dollar FLSA Litig.*, 2009 U.S. Dist. LEXIS 52109, at *17 (W.D.N.C. June 19, 2009) ("[T]he bankruptcy courts' mere confirmation of plaintiff's plans—even short of an actual discharge of debts—satisfies the acceptance element of the judicial estoppel test."). Washington's plan was confirmed by the Bankruptcy Court on November 3, 2016 (*In re Washington*, Dkt. No. 59) and thus, at that point, the Court accepted his inconsistent position that he had no legal claims against Continental, which was never amended even after Washington's filing of his EEOC Charge.

Finally, during his bankruptcy proceedings, Washington obtained automatic stays against creditors and numerous other benefits. Thus, it follows that Washington's decision not to disclose his claims against Continental was not inadvertent, as he had a financial incentive to keep the claims hidden.  *See, e.g., Brockington*, 2007 U.S. Dist. LEXIS 96248, at *12 (finding that plaintiff acted intentionally in failing to disclose a lawsuit to the bankruptcy court where she knew of the claims and "had motive to fail to disclose the claims . . . as proper disclosure could have increased the amount of her assets, resulting in less favorable Chapter 13 payment plans"); *Vanderheyden*, 2013 U.S. Dist. LEXIS 399, at *42–43 ("Had Vanderheyden properly disclosed her EEOC charge,

as required, such charge and the facts supporting it would have been placed in the bankruptcy estate, . . . [and] likely [would] have increased the assets of such estate, which would have increased the assets available to Vanderheyden's creditors and deprived her of exclusive recovery on such claims."); *In re Superior Crewboats, Inc.,* 374 F.3d 330, 336 (5th Cir. 2004) ("The [plaintiffs] had the requisite motivation to conceal the claim as they would certainly reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors.").

For these reasons, Washington is judicially estopped from pursuing all of his claims here, as he is bound by the inconsistent position and sworn misrepresentations that he made in his federal bankruptcy proceeding, and his claims against Continental must be dismissed, with prejudice.

## II.    There is No Evidence Supporting Washington's FMLA Retaliation Claim and it Fails as a Matter of Law.

Washington alleges that Continental retaliated against him in violation of the FMLA. *See* Second Amended Complaint, ¶ 31–35. But, as demonstrated below, Washington's allegations are wholly unsupported and even contradicted by his own deposition testimony wherein he states, by way of example, that no one at Continental did anything to retaliate against him pursuant to the FMLA—including John Stein, who is the only individual to whom Washington attributes any animus. *See* Pl.'s Dep. 126:24–127:3; 128:13–130:5.[5]    Accordingly, Washington's retaliation claim under the FMLA is entirely without merit and is subject to dismissal as a matter of law.

---

[5] When asked whether anyone took any action to retaliate against him under the FMLA, Washington named John Stein, but instead of focusing on FMLA retaliation, discussed the ways in which he believed Mr. Stein discriminated against him because of his age.  When the question was posed a second time, Washington then stated that no actions had been taken by anyone at Continental to retaliate against him, including Mr. Stein.  *See* Pl.'s Dep. 126:24–129:21.

Because Washington has no direct evidence of retaliation under the FMLA[6], to state even a *prima facie* case of retaliation under the FMLA, Washington must demonstrate that (i) he engaged in protected activity; (ii) Continental took adverse action against him; and (iii) that a causal connection existed between the protected activity and the adverse action. *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016). If Washington succeeds in proving a *prima facie* case, the burden shifts to Continental "to articulate some legitimate, nondiscriminatory reason for" Washington's termination. If Continental satisfies this burden of production, then Washington must then prove by the preponderance of the evidence that the legitimate reasons offered by Continental were not its true reason but were instead pretext for retaliation. *See Mercer v. Arc of Prince Georges Cnty*, 532 Fed. App'x 392, 398 (4th Cir. 2013).

As discussed below, Washington cannot state even his *prima facie* case of FMLA retaliation, nor can he establish that the reasons for his separation were pretext for FMLA retaliation. Therefore, the Court should dismiss his FMLA retaliation claim with prejudice.

## A. Washington Cannot State a *Prima Facie* Case of FMLA Retaliation.[7]

Washington appears to contend that his time off to care for his mother constituted a protected activity under the FMLA. But, Washington admitted at his deposition that he did not request time off under the FMLA during his mother's illness, despite being intimately familiar with the process, nor did he even mention the FMLA in discussion with any Continental employee

---

[6] *See* Pl.'s Dep. 129:14–17.

[7] In his initial Complaint and first Amended Complaint, Plaintiff asserted a claim for FMLA interference, rather than FMLA retaliation. When his FMLA interference claim was challenged by Defendant in a Motion to Dismiss on the grounds that no interference claim can be stated when a plaintiff, like Plaintiff here, is provided all of the leave that he could have been entitled to under the FMLA (*see* Dkt. No. 8), Plaintiff withdrew his claim voluntarily. After withdrawing the FMLA interference claim, through prior counsel, he sought to amend his complaint to add instead the instant FMLA retaliation claim.

at the time his mother was ill. Facts, at ¶¶ 15–17. Without more, Washington's discussions with either John Stein or Oscar Boyles about some time off to care for his mother (which was approved) does not constitute protected activity or otherwise invoke the protections of the FMLA.[8] *See, e.g., Wemmit-Pauk v. Beech Mountain Club*, 140 F. Supp.2d 571, 581 (W.D.N.C. 2001) (granting employer's summary judgment motion where there was no protected activity when no medical records were submitted supporting a serious medical condition and where there was otherwise no documentation of any serious health condition requiring medical treatment); *Wilkerson v. Great Prairie Education Agency*, 135 F. Supp. 935, 940 (S.D. Iowa 2015) (stating that an employee who does not provide proper medical certification is unable to satisfy the burden of proving "protected" activity for purposes of FMLA retaliation).

On this ground alone, Washington's FMLA *prima facie* case fails, and summary judgment is proper. *See, e.g., Hayes v. Deluxe Mfg. Operations, LLC,* 2018 U.S. Dist. LEXIS 67373 (N.D. Ga. 2018) (recommending grant of summary judgment and finding that an employee's failure to submit certification paperwork necessary to demonstrate eligibility for FMLA leave precluded finding of protected activity under the FMLA).

---

[8] To the extent that Plaintiff contends that any leave after his mother's passing entitled him to the protections of the FMLA or constituted protected activity, he is incorrect. Under the FMLA, a "serious health condition" of a covered family member contemplates only medical conditions of ***the living*** and does not contemplate any time taken after a covered family member passes away. *See, e.g., Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48, 66, n.13 (D.C. Cir. 2011) (denying FMLA claim because "[t]he FMLA does not cover bereavement leave, and thus the defendant could not have violated the statute in denying the plaintiff time off ***after*** his mother's funeral"); *Barone v. Leukemia Society of America*, 42 F. Supp. 2d 452, 460 (D.N.J. 1998) ("[B]ereavement leave or absence from work following the death of one's immediate family is not protected by the FMLA.").

**B.     Even if Washington Could State a *Prima Facie* Case of Retaliation under the FMLA, He Cannot Establish Pretext.**

Continental having articulated a legitimate, non-retaliatory reason for Washington's termination (*i.e.*, repeated and excessive, unexcused absenteeism), Facts, at ¶¶ 22–28, Washington must prove that the stated reason is pretextual for unlawful retaliation. "To carry [his] burden at the pretext stage. . . [Washington] must present evidence to 'establish that both the employer's reason for the termination was false and that retaliation was the real reason for the challenged conduct." *Cole v. Family Dollar Stores of Maryland, Inc*., 811 Fed. App'x 168, 174 (4th Cir. 2020). Washington must show that "***but for***" an intent to retaliate against him because of the exercise of rights under the FMLA, he would not have suffered an adverse job action. *Conkwright v. Westinghouse Elec. Corp*., 933 F.2d 231, 234 (4th Cir. 1991) (emphasis added). Washington cannot meet this heavy burden.

As an initial matter, and as discussed above, Washington himself admits that there were no actions taken by anyone at Continental that were in retaliation for him taking time off to care for his mother while she was ill. Pl.'s Dep. 126:24–127:3, 128:13–130:5. Indeed, any absences that could have been FMLA qualifying were not considered in the decision to terminate Washington's employment or in calculating his accumulated absence points. Facts, at ¶ 28. He further admits that he was never told by anyone at Continental that he was being terminated for taking time off to care for his mother. Pl.'s Dep. 129:14–17. Moreover, the only person to whom he attributes any animus is John Stein. Pl.'s Dep. 126:24–127:3. But, Mr. Stein had absolutely nothing to do with the decision to separate Washington's employment and Washington still testified that Mr. Stein did nothing to retaliate against him in violation of the FMLA. Pl.'s Dep. 129:4–13.

With these many concessions by Washington, he could be left with only the timing between the alleged protected activity and his termination. However, timing alone is not "independently

sufficient to create a triable issue of fact." *Mercer*, 532 Fed. App'x at 399 (affirming the lower court's award of summary judgment to the employer where plaintiff could not establish a genuine issue of material fact as to pretext based on timing of events where plaintiff returned from FMLA leave on March 14 and was terminated on March 23).

This is particularly true where, as here, there was an intervening event between the purported protected activity and the termination. *See Laing v. Federal Express Corp.,* 703 F.3d 713, 722 (4th Cir. 2013). In *Laing*, for example, the plaintiff took protected leave but was subsequently terminated for violation of company policy due to her falsification of delivery records. *Id.* at 715–16. There, the court affirmed the lower court's award of summary judgment to the employer because there was no genuine triable issue that her discharge was not pretextual. *Id.* at 722. The Court stated that there was "considerable evidence" both that the plaintiff "violated a clearly communicated company policy forbidding delivery records falsification—a policy upon which FedEx's commercial viability depends" and that "the company genuinely believed in this reason for terminating Laing." *Id.*; *see also Cole*, 811 Fed. App'x at 174 (holding that plaintiff's intervening misconduct cut off any causation established by timing alone where plaintiff was terminated thirteen days after making an age discrimination complaint to human resources but where plaintiff, subsequent to the complaint, had two consecutive no call/no show absences which was a terminable offense under the employer's policy).[9]

Here, like in *Laing*, there can be no genuine dispute that as a result of Washington's unexcused absences from work for multiple days following his bereavement leave, he accumulated six absence points and six unexcused absences subjecting him to termination pursuant to the terms

---

[9] For these same reasons, Washington also cannot satisfy the fourth prong of his *prima facie* case, that a causal connection existed between the protected activity and the adverse action, and on that basis, his claim must fail.

of Continental's attendance policy.  Washington admits that he failed to return to work after his mother's death and his exhaustion of bereavement leave (Pl.'s Dep. 75:4–7) and none of these absences were excused (Pl.'s Dep. 95:3–13, 110:25–111:5), and cannot dispute the number of absence points he accrued (Pl.'s Dep. 84:24–86:12, 95:19–24). Washington also admits that he can point to no Continental employee who was not similarly terminated for excessive absenteeism. Pl.'s Dep. 66:24–67:14.

At best, Washington's retaliation claim is based on nothing more than his disagreement with Continental's decision and his apparent belief that, because he was approved for time off to care for his mother while she was ill, he could avoid the consequences of his failure to report to work after her death as he indicated he would and related failure to comply with Continental's attendance policy.  Washington's reasoning is severely flawed, as the anti-retaliation protections of the FMLA do not immunize Washington from the natural consequences of such actions. *See, e.g., Laughlin v. Metro. Washington Airports Auth*., 149 F.3d 253, 260 (4th Cir. 1998) (protected activity under Title VII "was not intended to immunize insubordinate, disruptive, or nonproductive behavior at work."); *Mercer*, 532 Fed. App'x at 399 (stating that the "unexceptional fact" that a plaintiff disagrees with a decision is not enough to sustain an FMLA retaliation claim).

Therefore, for all of these reasons, Washington fails to establish a claim for FMLA retaliation and his claim should be dismissed with prejudice.

### III.    Washington's Age Discrimination Claim Under the ADEA Fails as a Matter of Law.

A plaintiff "bringing a disparate treatment claim pursuant to the ADEA must prove by the preponderance of the evidence that age was the '*but for*' cause of the challenged adverse employment action." *See Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 177–78, 129 S. Ct. 2343

(2009) (emphasis added). Washington can attempt to meet this burden through direct or circumstantial evidence. *See Cole*, 811 Fed. App'x at 172.

In the instant action, Washington admits that no one told him that his employment was terminating because of his age. Pl.'s Dep. 156:12–15. Washington contends that his supervisor, John Stein—who is several years **older** than Washington, made a handful of comments to him that were purportedly age-based. More specifically, Washington testified that on two occasions Mr. Stein asked him how old he was and when he planned to retire; that during one of those instances, Mr. Stein told him that he did not look his age; and that on a few occasions, Mr. Stein called him an "old man". *See* Pl.'s Dep. 132:11–139:17. For each of these instances, Washington could not state even the year in which the comments were purportedly made. *Id.*

These comments fail to rise to the level of direct evidence of discrimination under well-settled case law. The Fourth Circuit has used the test articulated by the Fifth Circuit in *Jackson v. Cal-W Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010) to determine whether derogatory comments can constitute direct evidence of discrimination. *See Cole*, 811 Fed. App'x at 175; *Arthur v. Pet Dairy*, 593 Fed. App'x 211, 218 (4th Cir. 2015). Under that test, derogatory comments are direct evidence of discrimination only if they are (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment at issue. *Jackson*, 602 F.3d at 380; *Cole*, 811 Fed. App'x, at 175. Even assuming that the statements allegedly made by Mr. Stein were derogatory, rather than simply innocuous comments made in workplace conversation, they are not at all probative of any discriminatory animus, and they do not satisfy the *Jackson* test.

First, there is no evidence that the statements were close in time to Washington's termination in April 2019. In his deposition, Washington could not identify when the alleged statements were made, or even that they were made in 2019. Second, John Stein had nothing to do with the decision to terminate Washington's employment. He was not consulted about the decision, nor was he involved in the communication of the decision to Washington. *See* Facts, at ¶ 29. Finally, these statements were in no way related to Washington's termination or his absences resulting in the same. Accordingly, Washington has no direct evidence of age discrimination and he, therefore, must utilize the burden shifting analysis articulated by *McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), which first requires Washington to prove a *prima facie* case of age discrimination.

To establish a *prima facie* case under the ADEA, Washington must show that (1) he is a member of a protected class; (2) he was performing his job satisfactorily; (3) he was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089 (1981); *Throckmorton v. Waste Mgmt. of Carolinas, Inc.,* 34 Fed. App'x. 88, 91 (4th Cir. 2002); *Blythe v. Harris Teeter LLC*, 2019 U.S. Dist. LEXIS 69439, at *11–12 (D.S.C. Apr. 3, 2019). If Washington establishes a *prima facie* case, the burden then shifts to Continental to articulate a legitimate, nondiscriminatory reason for the challenged action; however, this burden "is one of production, not persuasion." *See Spain v. Mecklenburg County Sch. Bd.,* 54 Fed. App'x 129, 133 (4th Cir. 2002) (citation and internal quotation marks omitted). Once Continental meets this burden, the presumption of unlawful discrimination created by the *prima facie* case then "drops out of the picture," and the burden shifts back to Washington to show

that the given reason was pretext for discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–511, 113 S. Ct. 2742, 2749 (1993).

Washington cannot merely raise an inference of discrimination.  *See Spain,* 54 Fed. App'x at 133.  Rather, to overcome a motion for summary judgment, plaintiff must demonstrate that "age was the 'but for' cause of the adverse employment action; therefore, it is not enough for a plaintiff in an age discrimination case to show that age was merely a 'motivating' factor in the decision." *See Boutin v. Hampton Inn,* 2013 U.S. Dist. LEXIS 146070, at *5–6 (W.D.N.C. Oct. 9, 2013) (citing *Gross*, 557 U.S. at 177–78, 129 S. Ct. at 2343).

This ultimate burden in ADEA cases "is a heavy one to carry," *see Boutin*, 2013 U.S. Dist. LEXIS, at *10, and, Washington fails to meet this burden.

### A.     Washington Cannot Establish a *Prima Facie* Case of Age Discrimination.

#### 1.     Washington was not meeting Continental's legitimate expectations at the time of his termination.

An ADEA plaintiff, like Washington here, must show that he was meeting the "employer's legitimate job expectations."  *Warch v. Ohio Cas. Ins. Co*., 435 F.3d 514, 513 (4th Cir. 2006). Under the facts of this case, it cannot be disputed that Washington failed to meet Continental's legitimate expectations.  Washington does not dispute that, following his mother's death on April 10, 2019, that he did not return to work, that he was absent for six scheduled shifts in a span of just ten days, and that none of these six absences were excused. Pl.'s Dep. 75:4–7, 95:3–13, 110:25–111:5.  All of this is true despite his acknowledgement at the beginning of his employment that he would familiarize himself with Continental's employment policies and comply with them, including its attendance policy, and despite being advised by Mr. Boyles prior to accruing additional unexcused absences that he needed to contact Human Resources and Mr. Tucker if he anticipated more absences from work.  Facts, at ¶¶ 8, 24.

Reliable attendance at the workplace is presumed to be a requirement of almost any job under well-settled case law. *See, e.g., Tyndall v. Nat'l Educ. Ctr. of Calif.*, 31 F.3d 209, 213 (4th Cir. 1994) "An employee who cannot meet attendance requirements of the job at issue cannot be considered a 'qualified' individual" because a "regular and reliable level of attendance is a necessary element of most jobs"); *Walders v. Garrett*, 765 F. Supp. 303, 309 (E.D. Va. 1991) (holding that a "reasonably regular and predictable attendance is necessary for many [jobs]").

Indeed, Washington himself admits that good attendance is important for a business. Pl.'s Dep. 57:17–20.

That Washington may believe that his absenteeism while employed by Continental was acceptable and his attendance satisfactory is irrelevant, as it is Continental's belief regarding his performance that is relevant. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (holding that plaintiff's belief that he was meeting employer's legitimate job expectations was irrelevant); *see also Evans*, 80 F.3d at 960–61. Accordingly, because Washington was not meeting Continental's legitimate expectations regarding attendance, Washington cannot establish the second prong of his *prima facie* case of age discrimination and his claim fails. *See Izzard v. Bellsouth Telcoms.*, 2002 U. S. Dist. LEXIS 30009, at *24 (D.S.C. Aug. 24, 2006) (holding that the plaintiff could not establish the second prong of his *prima facie* case of age discrimination under the ADEA where the record evidence revealed his attendance was unsatisfactory).

### 2. Washington's employment did not terminate under circumstances giving rise to an inference of age discrimination.

Even if the Court were to assume that Washington satisfied Continental's legitimate expectations at the time of his discharge, which he did not, he must still show that his termination occurred under circumstances that raise a reasonable inference of unlawful discrimination. *See Throckmorton.*, 34 Fed. App'x. at 91. Washington cannot make this required showing.

First, Washington testified under oath that the only individual he believes took any discriminatory action against him because of his age was John Stein. Pl.'s Dep. 130:6–17. But, as discussed above, Mr. Stein is ***several years older*** than Washington and it is undisputed that Clayton Tucker and Nicole Kosinski made the decision to terminate Washington's employment without any consultation with Mr. Stein. *See* Facts, at ¶ 29. Further, both Mr. Tucker and Ms. Kosinski were over 40 years old at the time of Washington's termination—with Mr. Tucker being only 5 years younger than Washington at that time. Facts, at ¶¶ 5, 30. These facts, alone, bely any inference of age discrimination. *See, e.g., Wakefield-Brace v. Greenwood Sch. Dist. 50*, 2017 U.S. Dist. LEXIS 91456, at *33 (D.S.C. May 25, 2017) (stating where the decisionmakers were all over 40 years old, the "fact that [the] decisionmakers are in the same protected class as the plaintiff further weakens any possible inference of discrimination"); *see also Robinson v. Greenwood Cnty.*, 2011 U.S. Dist. LEXIS 145031, at *4 (D.S.C. Nov. 22, 2011) (stating that a seven-year age difference was not substantial enough in an ADEA case); *Grojean v. First Energy Corp.*, 349 F.3d 332, 338 (6th Cir. 2003) ("The overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough to make out the fourth part of the age discrimination *prima facie* case.").

Second, Washington fails to name a single comparator outside of his protected class who engaged in similar conduct and was not terminated. When asked at his deposition to identify any employee who exceeded the allowed, unauthorized or unexcused absences under Continental's attendance policy and was not terminated, Washington responded: "I would not know." Pl.'s Dep. 67:4–14. *See Izzard*, 2002 U.S. Dist. LEXIS, at *24 (granting summary judgment where the plaintiff could not identify a proper comparator not similarly disciplined).

Third, Washington testified that he does not know who, if anyone, replaced him or even whether Continental posted a vacancy for his position after his termination. Pl.'s Dep. 67:15–19; 67:23–25. And, the evidence shows that Washington was not replaced by anyone. In reality, Continental is a tire manufacturer who relies on Tire Build Operators to produce its product, frequently hires for the position to ensure that it can successfully run its business and would have hired additional Tire Build Operators regardless of Washington's termination. The Tire Build Operator job posting is always posted to fill routine Tire Build Operator roles. *See* Facts, at ¶¶ 31. It was not posted in response to Washington's termination, and six people were hired months after and at various times following his termination. *See id.*, at ¶¶ 31–33. Thus, Washington simply cannot present any evidence that he was terminated and replaced by anyone, much less with some improper motive to replace him with a younger worker.

With Washington's concessions and in consideration of the other record evidence, Washington simply cannot establish the fourth prong of his *prima facie* case of age discrimination. *See, e.g., Sumter v. Jenny Craig, Inc.*, 2016 U.S. Dist. LEXIS 80618, at *15 (D.S.C. Mar. 23, 2016) (holding the plaintiff could not state a *prima facie* case of age discrimination in the face of failing to name a comparator and recommending summary judgment); *see Surrett v. Consol. Metco, Inc.*, 2012 U.S. Dist. LEXIS 91182, at *25 (W.D.N.C. July 2, 2012) (granting summary judgment where plaintiff "produced no forecast of evidence, direct or otherwise, to suggest that age was the 'but for' cause of her termination"). Therefore, his claim fails and must be dismissed.

### B.    Washington Cannot Show that Continental's Legitimate Non-Discriminatory Reason for Terminating His Employment is Pretextual.

Even if Washington could establish a *prima facie* case of age discrimination, which he cannot, his claim still fails because he cannot establish that Continental's legitimate non-

discriminatory reason for his termination—his failure to return to work and excessive, unexcused absences—is pretextual.

As discussed above, Washington testified that John Stein—an older non-decisionmaker—is the only individual he believes took any discriminatory action against him because of his age. *See supra,* page 26. Mr. Stein's age (59) and status as a non-decisionmaker, along with the ages of the two decisionmakers—Mr. Tucker (51) and Ms. Kosinski (42)—preclude Washington from establishing pretext, and therefore from establishing his age discrimination claim. *See Wakefield-Brace*, 2017 U.S. Dist. LEXIS 91456, at *33 (recommending summary judgment because there was no evidence of age discrimination where the decisionmakers were all over 40 years old); *Straszheim v. Gerdau Ameristeel U.S.*, 2010 U.S. Dist. LEXIS 20175, at *12–15 (W.D.N.C. Mar. 5, 2010) (stating that plaintiff could not establish pretext for age discrimination where the committee members involved in the termination decision were all over 40, including one who was 44 years of age); *see, e.g.*, *Cartee v. Wilbur Smith Assocs.*, 2010 U.S. Dist. LEXIS 128745, at *15 (D.S.C. Oct. 6, 2010).

Further, Washington's testimony that Mr. Stein asked him how old he was and when he planned to retire, told him that he does not look his age, and called him an "old man" does not otherwise establish pretext for age discrimination. There is no evidence that these statements had anything to do with the decision to terminate Washington's employment. *See, e.g.,* Pl.'s Dep. 131:16–135:12, 136:18–138:17. Accordingly, these are nothing but stray and innocuous remarks, made by a non-decisionmaker older than Washington, and unrelated to the adverse employment action. Thus, they are not probative of age discrimination or pretext. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S. Ct. 1775, 1804–05 (1989) ("[S]tatements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not]

suffice to satisfy the plaintiff's burden of proving discrimination"); *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 549 (4th Cir. 1995), *rev'd on other grounds*, 517 U.S. 308 (1996) (holding that the statement "it's about time we get some young blood in this company" is "innocuous and create[s] no inference of age bias"); *Dalton v. World Acceptance Corp.*, 2012 U.S. Dist. LEXIS 173250, at *14–15 (D.S.C. Oct. 30, 2012) (holding that a statement by plaintiff's manager referring to him as an "old man" was a "stray remark[] evincing no discriminatory intent"); *Kiesner v. Starbucks Corp.*, 2013 U.S. Dist. LEXIS 96993, at *25 (D.S.C. May 14, 2013) (holding that references to plaintiff as an "old man" by a non-decisionmaker were stray remarks and not enough to survive summary judgment); *Hill v. Spartanburg Reg'l Health Servs. Dist., Inc.*, 2015 U.S. Dist. LEXIS 33959, at *39 (D.S.C. Jan. 30, 2015) (finding the comment "shut your damn black mouth" remote from the adverse action and not indicative of discrimination).

Finally, the very fact that Washington was well over 40 at the time of his hire **only 15 months** prior to his termination—from the very same department with the very same department head who made the termination decision—creates a strong inference that age was not a factor in his termination. *See, e.g., Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) ("The fact that the employee was hired and fired by the same person within a relatively short time span . . . creates a strong inference that the employer's stated reason for acting against the employee is not pretextual."). At the time that Washington was hired as a full-time Tire Build Operator at Continental's Sumter Plant he was 55 years old, and Clayton Tucker was the head of the Tire Build Department as the Department Manager. *See* Pl.'s Dep. 10:20–22; Facts, at ¶ 2. At the time of Washington's termination only 15 months later, Mr. Tucker remained the Tire Build Department Manager and, in conjunction with Ms. Kosinski, made the decision to terminate his employment. *See* Pl.'s Dep. 10:20–22; Facts, at ¶ 28.

As the Fourth Circuit in *Proud* noted, it "hardly makes sense [for any employer] to hire workers from a group [it] dislikes . . . , only to fire them once they are on the job." *Proud*, 945 F.2d at 797; *Rosenow v. CareCore Nat'l, LLC*, 2012 U.S. Dist. LEXIS 68800, at *24–25 (D.S.C. May 17, 2012) (holding that there was a strong inference that discrimination was not a determining factor in the termination decision where plaintiff was fired by the same person who hired him 17 months prior).

In sum, Washington cannot make the showing necessary to establish pretext and rebut Continental's legitimate, non-discriminatory reason for his termination and survive summary judgment. He admits that he was advised by Mr. Boyles to contact Human Resources and Mr. Tucker if he anticipated being absent after exhaustion of his bereavement leave on April 14, 2019 but did not do so, that he did not return to work following's his mother's death on April 10, 2019 and exhaustion of bereavement leave, and that his subsequent and repeated six absences for scheduled shifts were not excused. There is no genuine dispute that Washington violated Continental's attendance policy with his absences, much less "that the company was somehow wrongly motivated in believing this to be case" when the decision was made to terminate his employment. *Laing,* 703 F.3d at 722.

Rather, Washington has only his own conclusory and unsupported assertions that Continental terminated his employment because of his age, which is insufficient to survive a motion for summary judgment. *See Beale,* 769 F.2d at 214 (stating that a plaintiff cannot survive summary judgment by building one inference upon another).

Washington's argument boils down to the discredited, routinely rejected, and speculative syllogism that he is over 40 years of age, he was terminated, and therefore, he was terminated

because he is over 40 years of age.  *See Thompson*, 380 F.3d at 215–17.  Therefore, plaintiff's disparate treatment claim under the ADEA fails as a matter of law.

### Conclusion

Based on the foregoing, Defendant Continental Tire the Americas, LLC, by and through counsel, requests that the Court enter an Order granting its Motion for Summary Judgment; dismissing Washington's Second Amended Complaint, with prejudice, pursuant to Fed. R. Civ. P. 56; awarding it its costs and reasonable attorneys' fees; and awarding it such further relief as the Court deems just and proper.

This the 15th day of July 2022.

By:     /s/ T. Richmond McPherson
       T. Richmond McPherson, III
       (Fed. Bar No. 11214)
       rmcpherson@mcguirewoods.com
       Meredith A. Pinson *(admitted pro hac vice)*
       (N.C. Bar No. 39990)
       mpinson@mcguirewoods.com
       MCGUIREWOODS LLP
       201 North Tryon Street, Suite 3000
       Charlotte, North Carolina 28202
       Tel. (704) 343-2038
       Fax. (704) 444-8783

       **ATTORNEYS FOR DEFENDANT**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

Gary Washington,

              Plaintiff,

      v.

Continental Tire the Americas, LLC,

              Defendant.

C/A No. 3:20-cv-04056-MGL-SVH

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2022, I filed electronically the foregoing document with the Clerk of Court using the CM/ECF system. Notice of Filing will be sent to all counsel of record, including counsel for Plaintiff below, by operation of the Court's electronic filing system as follows:

William L. Runyon, Jr.
William L. Runyon, Jr. Law Office
3 Gamecock Avenue, #303
Charleston, South Carolina 29407
runyonwilliamjr1@bellsouth.net
843-571-3515 (phone)

Amber C. Robinson, Esq.
Robinson Law Office PLLC
360 Central Avenue Ste. 800
St. Petersburg, FL 33701
arobinson@arobinsonlawfirm.com
arobinsonlawfirm@gmail.com
813-613-2400 (phone)
727-362-1979 (fax)

                      /s/ T. Richmond McPherson, III
                       T. Richmond McPherson, III (Fed. ID #11214)