IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Gary Washington,<br><br>                Plaintiff,<br><br>v.<br><br>Continental Tire the Americas, LLC,<br><br>                Defendant. | C/A No. 3:20-cv-04056-MGL-SVH |

## DECLARATION OF NICOLE KOSINSKI IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, NICOLE KOSINSKI, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am over 18 years of age. I was 42 years old at the time of Plaintiff Gary Washington's ("Washington") termination. I give this declaration on my own free will. This declaration is based on my own personal knowledge and belief as a result of my direct involvement in facts underlying this action and upon my review and knowledge of the documents further discussed herein. If called as a witness, I am competent to testify to the matters declared herein.

2.  I have been employed by Continental Tire the Americas, LLC ("Continental" or "the Company") at its Sumter, South Carolina plant (the "Sumter Plant") for approximately nine years. During my employment with Continental, I have held several Human Resources roles at the Sumter Plant, including Human Resources Staffing Specialist, Human Resources Generalist (also referred to as Human Resources Business Partner), and Human Resources Manager. During the employment of Washington by Continental, I held the position of Human Resources Business Partner.

3. I was promoted to the role of Human Resources Manager at the Sumter Plant and have been in this role since April 2021.

4. In the normal course and scope of my duties as a Human Resources professional employed by Continental at the Sumter Plant, I am responsible for, among other things, overseeing and managing human resources policies, procedures, and documents maintained by Continental. I regularly refer to, manage, and apply these policies and practices while performing my job duties.

5. In my role and experience as a Human Resources professional with Continental, I am familiar with and have access to certain Continental employment files including electronic databases and portals. These files and databases contain employment information regarding current and former Continental employees, including certain demographic information, job applications, new-hire paperwork, onboarding materials and other personnel and employment-related information and documents. I regularly refer to files of this nature while performing my job duties and I am also familiar with the way in which Continental creates and maintains these records, which are maintained in the ordinary course of Continental's business.

6. In the normal course and scope of my duties, I am also responsible for participating in investigations into and discussions regarding employee conduct, participating in and advising on employee terminations and discipline and other personnel-related matters, and assisting in the communication of termination and discipline decisions.

**Gary Washington's Employment with Continental**

7. I am familiar with Washington, a former employee of Continental at the Sumter Plant, and I also have access to and have reviewed Continental's human resources records for Washington.

8. Washington first provided services to Continental at the Sumter Plant beginning in June 2017 as a temporary employee staffed through the Norman Williams & Associates, Inc. staffing agency. During his time as a temporary employee, he became certified as a Tire Build Operator. Washington was thereafter offered a full-time position with Continental as a Tire Build Operator and became a full-time Continental employee on January 29, 2018. At the time of Washington's hire into his full-time Tire Build Operator position, Clayton Tucker was the Tire Build Department Manager at the Sumter Plant.

9. Washington reported to Oscar Boyles until approximately April 2019 when Mr. Boyles assumed a new role at the Sumter Plant. At that time, Washington began reporting to John Stein. In April 2019, both Mr. Boyles and Mr. Stein reported to Mr. Tucker.

10. According to Continental's records, Oscar Boyles was 41 years old at the time of Washington's termination; John Stein was 59 years old at the time of Washington's termination; and Clayton Tucker was 51 years old at the time of Washington's termination.

### Continental's Employment Policies

11. As a new hire at Continental, Washington completed onboarding paperwork, including an acknowledgement of Continental's Employee Handbook and additional employment policies. A true and correct copy of the acknowledgement signed by Washington on January 30, 2018 as maintained in Continental's employment files is attached as Exhibit 1. With his signature, Washington agreed to familiarize himself with all Continental polices and agreed to comply with them.

12. Continental's Employee Handbook contains, among other policies, attendance, bereavement leave, and FMLA policies. A true and correct copy of Continental's attendance policy applicable during Washington's employment is attached as Exhibit 2(a); a true and correct

3

copy of Continental's bereavement leave policy is attached as Exhibit 2(b); and a true and correct copy of Continental's FMLA policy is attached as Exhibit 2(c).

13. The Employee Handbook and employment policies are available for employees to view on Continental's intranet system. In addition, Human Resources Business Partners and Human Resources Coordinators are available to assist employees and have copies of the Employee Handbook and employment policies available should an employee wish to view a copy in that manner.

### Washington's Schedule and Absences from Work in April 2019

14. A true and correct copy of Washington's work schedule for April 2019 is attached as Exhibit 3. The work schedule includes various number and letter designations that are interpreted as follows:

   a. D239 refers to a scheduled day shift, which generally begins at 6:45 AM and ends at 7:00 PM;

   b. N093 refers to a scheduled night shift, which generally begins at 6:45 PM and ends at 7:00 AM the next day; and

   c. OF13 refers to an unscheduled shift, or the employee's off day.

15. A true and correct copy of Washington's attendance record from May 2, 2018 through May 2, 2019 is attached as Exhibit 4. Exhibit 4 shows Washington's absences, how those absences were coded pursuant to Continental's attendance policy (*i.e.* call/no show; no call/no show (also referred to as "no report, unpaid"); bereavement leave), how many absence points were assessed for each absence, and Washington's running balance of accumulated absence points.

16. Pursuant to clock-in/clock-out records maintained by Continental, the last day that Washington performed work at the Sumter Plant for Continental was April 1, 2019.

17. After Washington's mother's death in April 2019, and as set forth in Exhibit 4, Washington was absent from work on April 12, 13, and 14. *See* Ex. 4.

18. Because Washington's absences on April 12, 13, and 14 were due to his mother's death, bereavement leave was applied to his absences such that the three days were counted as excused absences for which Washington received full pay and was assessed no absence points.

19. Washington's bereavement leave exhausted on April 14, 2019. *See* Ex. 4.

20. After Washington's three days of bereavement leave were exhausted on April 14, 2019, Washington did not contact Human Resources to discuss the need for an extended leave or to ask whether any additional absences from work would be excused.

21. Following exhaustion of his bereavement leave on April 14, 2019, Washington was absent from work on April 15, 19, 20, 21, 23, and 24. *See* Ex. 4. These absences were not excused.

22. Pursuant to Continental's attendance policy and as reflected in Exhibit 4, Washington's absences through and following the exhaustion of his bereavement leave on April 14, 2019, were coded as follows and absence points were assessed as follows:

| Scheduled Work Day | Absence Coding | Absence Points Assessed |
|---|---|---|
| 4/12/2019 | Bereavement Leave | 0 points |
| 4/13/2019 | Bereavement Leave | 0 points |
| 4/14/2019 | Bereavement Leave | 0 points |
| 4/15/2019 | Call, No Show | 1 point |
| 4/19/2019 | Call, No Show | 1 point |
| 4/20/2019 | Call, No Show | 0 points (pursuant to Continental's Attendance Policy, if the employee is out for up to 3 days for the same reason and calls each day to report the absence, only 1 point will be assessed for all 3 days) |
| 4/21/2019 | Call, No Show | 0 points (pursuant to Continental's Attendance Policy, if the employee is out for up to 3 days for |

5

|           |                  | the same reason and calls each day to report the absence, only 1 point will be assessed for all 3 days) |
|-----------|------------------|---------|
| 4/23/2019 | No call, no show | 2 points |
| 4/24/2019 | No call, no show | 2 points |

*See* Ex. 3; Ex. 4.

23.     The Sumter Plant utilizes a designated phone number for employees to call to report any absences pursuant to the attendance policy: 803–720-5377.

24.     After Washington exhausted his bereavement leave on April 14, 2019, according to Exhibit 4, he accumulated six absence points as of April 24, 2019. *See* Ex. 4. Washington also accumulated six unexcused absences on April 15, 19, 20, 21, 23, and 24. *See* Ex. 4. Washington's accumulation of six absence points and six unexcused absences are terminable offenses pursuant to Continental's attendance policy. *See* Ex. 2(a).

### Washington's Employment with Continental Terminates

25.     I personally became aware of Washington's absences through the then Tire Build Department Manager, Clayton Tucker. Mr. Tucker communicated concerns to me about Washington's failure to return to work after he did not return to work as he had said that he would.

26.     Because Washington had not returned to work as he said that he would and had not reported if or when he planned to return, Mr. Tucker and I believed that Washington had no plans to return and had abandoned his job. I also reviewed the Absence Report attached hereto as Exhibit 4, and according to that document, Washington had also accumulated six absence points and six unexcused absences under Continental's attendance policy as of April 24, 2019. Accordingly, Mr. Tucker and I determined that Washington's employment with Continental would terminate. In calculating the accumulation of absence points and unexcused absences, we did not consider Washington's bereavement leave (pursuant to Continental policy), or any other absence in April

6

2019 prior to his bereavement leave. Mr. Tucker and I did not consult or speak with John Stein regarding the decision to terminate Washington's employment, nor was Mr. Stein involved in the communication of the termination decision to Washington.

27. Mr. Tucker connected with Washington on the telephone on or after April 24, 2019 and advised him that his employment with Continental terminated. Mr. Tucker reported to me that he had done so.

### Continental Regularly Has Job Openings For and Hires Tire Build Operators

28. After Washington's employment terminated, no one person was hired or engaged to "replace" him.

29. Continental is in the business of manufacturing tires at its Sumter Plant and Tire Build Operators are essential to its business. Thus, Continental regularly has job openings for Tire Build Operators and maintains a job posting for the role that is posted continuously such that applicants can apply for the position at any time.

30. At the time of Washington's separation from employment in April 2019, a Tire Build Operator job posting was already posted. It was not posted as a result of Washington's separation or to recruit anyone to replace Washington.

31. In response to that job posting, Continental hired six (6) Tire Build Operators.

32. Three of these individuals began their employment with Continental in June 2019, two in July 2019, and one in August 2019.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14 day of July, 2022, at Sumter, South Carolina.

_____
Nicole Kosinski

8