IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Gary Washington, | ) | C/A No.: 3:20-4056-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| Continental Tire the Americas, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this case, an employee sues his former employer, alleging he was discriminated and retaliated against, partly based on his age, resulting in losing his position. The former employer seeks dismissal of the claims.

Gary Washington ("Plaintiff") filed his complaint against his former employer, Continental Tire the Americas, LLC ("Defendant"), on November 20, 2020. In his second amended complaint, Plaintiff asserts claims of retaliation based on violations of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), and of discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"). [ECF No. 22].

Pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.), the case was referred to the undersigned for all pretrial proceedings. This matter comes before the court on Defendant's motion for summary

judgment. [ECF No. 63]. The motion has been fully briefed [ECF Nos. 67, 68] and is ripe for disposition.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant Defendant's motion for summary judgment.

I.    Factual and Procedural Background

A.    Plaintiff's Employment

Plaintiff began in June 2017 as a temporary employee at Defendant's tire production plant in Sumter, South Carolina (the "Sumter Plant"). [ECF No. 63-2 at 25:21–26:5, 28:2–7; ECF No. 63-3 ¶ 7]. During his time as a temporary employee, Plaintiff became certified as a tire build operator. [ECF No. 63-3 ¶ 8]. Plaintiff was thereafter offered full-time employment with Defendant as a tire build operator effective January 2018. [ECF No. 63-2 at 31:22–32:3]. At the time of Plaintiff's full-time hire, Clayton Tucker ("Tucker") was the tire build department manager at the Sumter Plant. [ECF No. 63-3 ¶ 8].

At all relevant times, Plaintiff worked at the Sumter Plant. [ECF No. 63-2 at 33:2–5]. During his full-time employment, Plaintiff reported to Oscar Boyles ("Boyles") until approximately April 2019, when Boyles assumed a new role the Sumter Plant [ECF No. 63-2 at 36:4–13; ECF No. 63-3 ¶ 9], and Plaintiff began reporting to John Stein ("Stein") [ECF No. 63-2 at 38:9–

11; ECF No. 63-3 ¶ 9]. In April 2019, both Boyles and Stein reported to Tucker. [ECF No. 63-3 ¶ 9].

At the time of Plaintiff's termination, Boyles was 41 years old; human resources manager at the Sumter Plaint Nicole Kosinski ("Kosinski") was 42 years old; Tucker was 51 years old; and Stein was 59 years old. [ECF No. 63-3 ¶¶ 1, 10]. As to Stein, Plaintiff testified as follows:

> He asked me my age several times. He asked me when I was going to retire. He called me an old man. And he pulled me from the job that I was hired to do to work in a—poor conditions and a—contrary to what he would do with other individual that were my peers and . . . were younger than me.

[ECF No. 63-2 at 128:1–8, *see id.* at 132:22–133:4, 135:1–10, 138:13–20 (Plaintiff testifying he was unsure what year these comments were made)].

B.    Defendant's Policies

Defendant maintains various employment related policies applicable to employees at the Sumter Plant. [ECF No. 63-3 ¶ 12]. Plaintiff became aware of Defendant's employment policies during his onboarding process as a new employee. [ECF No. 63-2 at 35:11–24, *id.* at 68]. The policies were likewise available for employees like Plaintiff to view at any point on Defendant's intranet system or in person by visiting one of the available human resources business partners or human resources coordinators at the Sumter Plant. [ECF No. 63-3 ¶ 13].

On January 30, 2018, Plaintiff signed an acknowledgment of Defendant's policies. [ECF No. 63-2 at 35:11–24; *id.* at 68; ECF No. 63-3 ¶ 11]. With his signature, Plaintiff agreed to familiarize himself with all of Defendant's polices and agreed to comply with them. [ECF No. 63-3 ¶ 11].

Defendant maintains an attendance policy for its employees at the Sumter plant. [ECF No. 63-3 ¶ 12, ECF No. 63-5]. The attendance policy provides, in relevant part, that employees must call in to report any absence. [ECF No. 63-5]. The Sumter Plant uses a designated number for absence reporting: 803-720-5377. [ECF No. 63-3 at ¶ 23]. If any employee is absent for up to three consecutive days for the same reason, the employee will only accrue one absence point, as long as he calls in each day of the absence and states the reason for being absent. [ECF No. 63-5; *see also id.* ("Employees have the responsibility for calling in and must do so daily unless physically unable or otherwise instructed by the Continental Occupational Health provider.")].

If the employee does not call to report the absence or reports it less than one hour prior to the start of the scheduled shift, the absence is considered a "no call, no show" or "no report unpaid" and results in the assessment of two absence points. *Id.* An accumulation of six absence points or six unexcused absences within any rolling 12-month period can result in the employee's discharge. *Id.*

4

Defendant also maintains a bereavement leave policy applicable to employees at the Sumter Plant. [ECF No. 63-6]. The bereavement policy provides, in relevant part, that the Company will provide employees up to three days of paid time off in the event of the death of a parent. *Id.*

Defendant also maintains a FMLA policy applicable to employees at the Sumter Plant. [ECF No. 63-7]. Pursuant to Defendant's FMLA policy, eligible employees are entitled to take leave of up to a maximum of twelve weeks per calendar year for conditions that qualify under the FMLA, including, as relevant here, to care for a parent with a serious health condition. *Id.* The policy also provides in part as follows:

> An employee must provide 30 days advance written note of a request for a leave that is foreseeable. For cases where such notice is not practicable, , notice must be given as soon as practicable . . . . The employee must follow the standard notification procedures (i.e., calling into a specified number or contracting a specific Company identified individual.

*Id.* Additionally, the employee must complete and submit a written request for FMLA leave and, for leave related to a serious health condition of a parent or spouse, must provide a physician certification issued by the health care provider of the employee's parent or spouse. *Id.*

Plaintiff became familiar with Defendant's FMLA policy when he applied for intermittent leave pursuant to the FMLA policy in December 2018 to care for his wife's serious health condition. [ECF No. 63-2 at 43:4–46:25, *id.*

at 72–81]. Plaintiff received the necessary forms from human resources, completed them, and returned them to human resources. [ECF No. 63-2 at 47:23–48:23, 50:23–52:19]. Plaintiff's FMLA request was approved by Defendant on January 7, 2019, and Plaintiff thereafter commenced intermittent leave for the need to care for his wife. [ECF No. 63-2 at 53:12–16, *id.* at 81].

    C.    Plaintiff's Absences and Termination

At some time prior to his last day of work on April 1, 2019, Plaintiff informed Stein in person of his mother's illness and that he needed time off. [ECF No. 63-2 at 111:20–113:24; ECF No. 63-3 ¶ 16]. Boyles and Stein approved Plaintiff's absences for the duration of his mother's illness. [ECF No. 63-2 at 113:3–24].

On April 10, 2019, Plaintiff's mother passed away. [ECF No. 63-2 at 62:1–6]. Two days after his mother's death, on April 12, 2019, Plaintiff informed Boyles of her passing. [ECF No. 63-2 at 72:16–22, *id.* at 82–83]. Boyles responded: "I'm sorry to hear this news. Just as soon as you all make plans, just let me know and we can go from there." [ECF No. 63-2 at 74:2–14, *id.* at 82]. Boyles also told Plaintiff by telephone that he was praying for Plaintiff's family. *Id.* at 74:15–75:3. Plaintiff did not speak directly with Stein about his mother's passing. *Id.* at 73:4–74:1.

On April 19, 2019, the following text exchange occurred between Plaintiff and Boyles:

> Plaintiff:    The funeral was good [and] complete. I will be back Apr 23. Could get any response from John [Stein] if I needed to fill out any paperwork . . . .
>
> Boyle:    Ok you get 3 days paid for bereavement anything over 4 days need to go through HR and Clayton [Tucker].
>
> Plaintiff:    Okay, thanks . . . . Be in there on evening of 23rd . . . .

[ECF No. 63-2 at 78:24–79:25, *id.* at 82–83].

Plaintiff did not return to work on April 23, 2019, or any day thereafter. [ECF No. 63-2 at 75:4–7, 80:20–81:3, 85:19–86:12; ECF No. 63-3 ¶ 16]. Plaintiff also did not text Boyles again concerning absences and only texted once more, on April 27, 2019, stating, "Hey Oscar, thanks for everything. John 3:16–18." [ECF No. 63-2 at 83].

Defendant has submitted evidence that Plaintiff called in to the Sumter Plant's absence-reporting line only intermittently during this time period, resulting in the following absences and absence points:

| Scheduled Work Day | Absence Coding | Absence Points Assessed |
|---|---|---|
| 4/12/2019 | Bereavement Leave | 0 points |
| 4/13/2019 | Bereavement Leave | 0 points |
| 4/14/2019 | Bereavement Leave | 0 points |
| 4/15/2019 | Call, No Show | 1 point |
| 4/19/2019 | Call, No Show | 1 point |
| 4/20/2019 | Call, No Show | 0 points (pursuant to Continental's Attendance Policy, if the employee is out for up to 3 days for the same reason and calls each day to report the absence, only 1 point will be assessed for all 3 days) |
| 4/21/2019 | Call, No Show | 0 points (pursuant to Continental's Attendance Policy, if the employee is out for up to 3 days for the same reason and calls each day to report the absence, only 1 point will be assessed for all 3 days) |
| 4/23/2019 | No call, no show | 2 points |
| 4/24/2019 | No call, no show | 2 points |

[*See* ECF No. 63-3 at ¶ 22; *see also* ECF No. 63-8, ECF No. 63-9].

Because Plaintiff did not return to work after he told Boyles that he would return on April 23, 2019, and did not indicated if or when he planned to return, Tucker and Kosinski, then human resources business partner at the Sumter Plant, believed that Plaintiff had no intention of returning to work and had abandoned his job. [ECF No. 63-3 ¶ 26]. Kosinski also reviewed the absence report, noting that Plaintiff had accumulated six absence points and six unexcused absences as of April 25, 2019. *Id.* Tucker and Kosinski decided to terminate Plaintiff's employment. *Id.* In calculating the accumulation of absence points and unexcused absences, Plaintiff's

bereavement leave was not considered, nor was any other absence in April 2019 prior to his bereavement leave. *Id.*

Kosinski and Tucker did not consult or otherwise speak with Stein regarding the decision to terminate Plaintiff's employment, nor was Stein involved in the communication of the termination to Plaintiff. *Id.*

At some point on or after April 24, 2019, Tucker connected with Plaintiff by phone and advised him that his employment with Defendant was terminated. [ECF No. 63-2 at 177:4–178:8; ECF No. 63-3 ¶ 27]. Plaintiff was 56 years old at the time he was terminated. [ECF No. 63-2 at 10:20–22].

D.     Defendant Hires Additional Tire Build Operators

Defendant has submitted evidence that it is in the business of manufacturing tires at its Sumter Plant and tire build operators are essential to its business. [ECF No. 63-3 ¶ 29]. Defendant regularly has job openings for tire build operators and maintains a job posting for the role that is continually posted such that applicants can apply for the position at any time. *Id.* Therefore, at the time of Plaintiff's termination in April 2019, a tire build operator job posting was already posted and was not posted because of Plaintiff's separation or to recruit anyone to replace Plaintiff. *Id.* ¶ 30.

In response to that job posting, Defendant hired six tire build operators. *See id.* ¶ 31. Three started with Defendant in June 2019, two in July 2019, and one in August 2019. *Id.* ¶ 32.

E.    Bankruptcy Proceedings

During Plaintiff's employment with Defendant, he was involved in bankruptcy proceedings. Prior to his employment, on May 30, 2016, Plaintiff, through counsel, filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of South Carolina, C/A No. 16-02667-JW. *See In re Washington*, 581 B.R. 150, 154 (Bankr. D.S.C. 2017).[1] On June 13, 2016, Plaintiff filed schedules accompanying his bankruptcy petition outlining his assets and debts, and he signed the schedules under penalty of perjury. [*Washington*, ECF No. 18]. Plaintiff disclosed a lawsuit he was involved in unrelated to the instant action in response to the direction to list any "claims against third parties, whether or not you have filed a lawsuit or made demand for payment." *Id.* at 8.

Plaintiff submitted three amendments to his bankruptcy petition and schedules thereafter, on October 4, 2016, December 1, 2016, and December 15, 2016. [*Washington*, ECF Nos. 48, 71, 77]. On November 3, 2016, the court confirmed Plaintiff's bankruptcy plan. [*Washington*, ECF No. 59]. Plaintiff's bankruptcy proceeding was ultimately dismissed on October 6, 2020, for non-compliance prior to a full discharge of his debts. [*Washington*, ECF No. 197].

---

[1] The court takes judicial notice of Plaintiff and his wife's bankruptcy cases. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (citation omitted).

On September 8, 2020, Plaintiff's wife, Michele Anne Washington, filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of South Carolina, C/A No. 20-03482-DD. On August 4, 2022, Plaintiff's wife, represented by counsel, filed an amendment to her petition and schedule, disclosing Plaintiff's instant lawsuit against Defendant. [*See id.*, ECF No. 96].

II.   Discussion

 A.   Standard on Motion for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.     Analysis

1.     Judicial Estoppel

As a preliminary matter, Defendant argues that Plaintiff's claims are barred by judicial estoppel and summary judgment should therefore be granted because he failed to disclose in his bankruptcy proceedings his EEOC charge or his contemplated FMLA claim arising from his termination. [ECF No. 63-1 at 12].

The Fourth Circuit has addressed the issue of judicial estoppel as follows:

> [J]udicial estoppel is an equitable doctrine, designed to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal quotation marks

> omitted). Typically, judicial estoppel is reserved for cases where
> the party to be estopped . . . has taken a later position that is
> "clearly inconsistent" with her earlier one; has persuaded a court
> to adopt the earlier position, creating a perception that "either
> the first or the second court was misled"; and would "derive an
> unfair advantage or impose an unfair detriment on the opposing
> party if not estopped." *Id.* at 750–51, 121 S.Ct. 1808 (internal
> quotation marks omitted). Finally, and central to this case, there
> is the longstanding principle that judicial estoppel applies only
> when "the party who is alleged to be estopped intentionally
> misled the court to gain unfair advantage," and not when "a
> party's prior position was based on inadvertence or mistake."
> *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th
> Cir. 1995) (emphasis added) (internal quotation marks omitted);
> *accord New Hampshire*, 532 U.S. at 753, 121 S.Ct. 1808 (quoting
> *John S. Clark*, 65 F.3d at 29).

*Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019); *see also, e.g., Thomas v. Palmetto Mgmt. Servs.*, C/A No. 305-17-CMC-BM, 2006 WL 2623917, at *4 (D.S.C. Sept. 11, 2006) (applying judicial estoppel and grant of summary judgment in favor of employer where plaintiff failed to disclose an EEOC charge filed after her bankruptcy petition), aff'd, 234 F. App'x 166 (4th Cir. 2007); *Vanderheyden v. Peninsula Airport Comm'n*, C/A No. 4:12-46, 2013 WL 30065, at *12 (E.D. Va. Jan. 2, 2013) (applying judicial estoppel where plaintiff failed to disclose the EEOC charge to the bankruptcy court, as she had knowledge of the claim "during the pendency of her bankruptcy action").

Here, Plaintiff does not dispute that in his bankruptcy proceedings he failed to disclose his EEOC charge of discrimination. [*See* ECF No. 63-1 at 14, ECF No. 67 at 1]. Plaintiff does not dispute that he was aware his duty to

disclose was ongoing and that he submitted three amendments to his relevant bankruptcy filings and still failed to disclose his charge of discrimination against Defendant. [*See* ECF No. 63-1 at 14–15, ECF No. 67 at 1]. Nor does Plaintiff dispute, or even address, Defendant's argument that even though the bankruptcy proceeding was ultimately dismissed on October 6, 2020, for non-compliance prior to a full discharge of his debts, estoppel remains appropriate,[2] nor that Plaintiff's decision not to disclose his claims against Defendant was not inadvertent, in that he had a financial incentive to keep the claims hidden. [*See* ECF No. 63-1 at 15–16, ECF No. 67 at 1].

Plaintiff's only response to the evidence and argument presented by Defendant as to this issue is to reference his wife's bankruptcy proceedings, noting that her attorney in those proceedings disclosed Plaintiff's claims

---

[2] As stated by this court:

> Plaintiff's position that she had no contingent or unliquidated claims was accepted by the bankruptcy court when it issued an order discharging Plaintiff's debts, discharging the trustee, and closing the case. *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) ("The second element of the judicial estoppel test, acceptance by the bankruptcy court, is also satisfied. That court certainly confirmed Jethroe's plan at least in part based on its assessment of her assets and liabilities.").

*Brockington v. Jones*, C/A No. 4:05-3267-RBH-TER, 2007 WL 4812205, at *4 (D.S.C. Nov. 28, 2007), report and recommendation adopted, C/A No. 4:05-3267-RBH, 2008 WL 238707 (D.S.C. Jan. 23, 2008); *see also In re Fam. Dollar FLSA Litig.*, C/A No. 3:08-MD-1932, 2009 WL 1750908, at *3 (W.D.N.C. June 19, 2009) ("As the *Brockington* court recognized, the bankruptcy courts' mere confirmation of Plaintiffs' plans—even short of an actual discharge of debts—satisfies the acceptance element of the judicial estoppel test.").

14

against Defendant on August 4, 2022. [ECF No. 67 at 1]. This does not address Plaintiff's failure to disclose in his own bankruptcy proceedings.

Accordingly, the undersigned recommends the district judge apply judicial estoppel in this case, granting Defendant's motion for summary judgment. In the alternative, as discussed more below, Plaintiff has failed to meet the mandates of Fed. R. Civ. P. 56(c) to defeat Defendant's motion for summary judgment. Additionally, Plaintiff's FMLA retaliation and ADEA discrimination claims are subject to dismissal on the merits.

2.    Summary Judgment Standard

After obtaining an extension, Plaintiff filed a six-page response to Defendant's motion for summary judgment, containing no evidence in support of his opposition. He largely repeats the same allegations made in his unverified pleading, including allegations made only "upon information and belief." [*Compare* ECF No. 22 ¶ 28 *and* ECF No. 67 at 4].[3] Plaintiff has not included any citations to the record and references only one case, *Craddock v. Lincoln Nat. Life Ins. Co.*, 533 F. App'x 333, 334 (4th Cir. 2013), discussed by the court below.

---

[3] Both Plaintiff's second amended complaint and opposition to Defendant's motion for summary judgment are unverified. [*See* ECF Nos. 22, 67]. In this Circuit, verified complaints filed by pro se plaintiffs can be considered as affidavits when the allegations contained therein are based on personal knowledge. *See, e.g., Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). However, Plaintiff is represented by counsel, and his filings are not verified.

Plaintiff has failed to meet the requirements provided in Fed. R. Civ. P. 56(c), stating that "a party asserting that a fact is genuinely disputed must support the assertion by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.'" *Williams v. Horry-Georgetown Tech. Coll.*, 26 F. Supp. 3d 519, 540 n.8 (D.S.C. 2014) (citing Fed. R. Civ. P. 56(c)). Thus, the nonmoving party "may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment" nor may he "rest upon the mere allegations or denials of his pleadings." *Id.* at 533; *Celotex*, 477 U.S. at 324.

Out of an abundance of caution, Plaintiff's claims are addressed below. However, Plaintiff's failure to comply with Fed. R. Civ. P. 56(c) warrants grant of Defendant's motion for summary judgment.

### 3.    FMLA Retaliation Claim

Because Plaintiff has no direct evidence of retaliation under the FMLA, he proceeds through the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973), burden-shifting framework. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). First, a plaintiff must establish a prima facie case by showing "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was

causally connected to the plaintiff's protected activity." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (citation omitted). The burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the alleged retaliatory action. *See id.* The burden then shifts to the plaintiff to prove by the preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reason but were instead pretext for retaliation. *See Mercer v. Arc of Prince Georges Cnty*, 532 Fed. App'x 392, 398 (4th Cir. 2013).

Even if the court assumes Plaintiff can establish a prima facie case, which Defendant disputes, he has failed to prove that the legitimate reasons offered by Defendant for his termination—excessive absences—is pretext for retaliation. On this issue, Plaintiff appears to argue that because no one contacted him about FMLA leave, offered him FMLA paperwork, "warned [him] that his continued leave would result in his immediate termination," or made clear the applicable leave policies, it is not clear if his termination was due to his FMLA leave, rendering grant of summary judgment inappropriate. [ECF No. 67 at 5–6].

The record does not support Plaintiff's argument. At his deposition, Plaintiff admitted that he communicated with Boyles, via text message on April 19, 2019. By April 19, 2019, according to Defendant's policies, nine days had elapsed since Plaintiff's mother's death and five days had elapsed since

his bereavement leave was exhausted. Additionally, this was at least five days before Plaintiff's employment terminated. Boyles informed Plaintiff then that he received three days of bereavement leave and that any absences beyond those three days needed to go through Defendant's human resources department or Tucker. Plaintiff admitted in his deposition that despite this information, he did not seek to have any of his future absences excused following his exhaustion of bereavement leave. [ECF 63-2 at 81:22–25].

The undisputed record indicates Plaintiff was aware that he was expected to return to work and was terminated because he told his supervisors on April 19, 2019, after his mother's passing, her funeral, and his exhaustion of bereavement leave, that he would return to work on April 23, 2019, and thereafter failed to show up to work. It was during this period that Plaintiff accumulated six attendance points and six unexcused absences pursuant to Defendant's policy and his employment subsequently terminated. Further, Plaintiff admitted in his deposition that no one did anything to retaliate against him under the FMLA,[4] and he has not pointed to any record evidence in his opposition that reflects a genuine dispute otherwise.

---

[4] In his deposition, Plaintiff initially stated that Stein retaliated against him under the FMLA, but then discussed Stein in relation to his age-based claim; when asked again, Plaintiff could not name a person or a way in which he had been retaliated against under the FMLA. [*See* ECF No. 63-2 at 126:24–130:5].

Accordingly, the undersigned recommends the district judge grant Defendant's motion for summary judgment as to Plaintiff's FMLA retaliation claim.

4.     ADEA Discrimination Claim

A plaintiff "bringing a disparate treatment claim pursuant to the ADEA must prove by the preponderance of the evidence that age was the 'but for' cause of the challenged adverse employment action." *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). Plaintiff can attempt to meet this burden through direct or circumstantial evidence. *Cole v. Fam. Dollar Stores of Maryland, Inc.*, 811 F. App'x 168, 172 (4th Cir. 2020).

Plaintiff argues that because Stein referenced his age, asked if he was considering retirement, and called him an "old man," and because he was replaced by a younger individual, that he has carried his burden as to his ADEA discrimination claim. [ECF No. 67 at 4].

Comments made by an older coworker at some unidentified point that were unrelated to Plaintiff's termination, made by a coworker wholly uninvolved in the decision to terminate him, fails to carry his burden. Additionally, Plaintiff admitted in his deposition he had no idea who replaced him [ECF No. 63-2 at 67:15–19, 67:23–25], and admissible record evidence

establishes that no one was specifically hired to replace Plaintiff after his termination in April 2019.[5]

There is no indication in the record that Plaintiff was terminated or otherwise discriminated against because of his age. Accordingly, the undersigned recommends the district judge grant Defendant's motion for summary judgment as to Plaintiff's ADEA discrimination claim.

## III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the district judge grant Defendant's motion for summary judgment. [ECF No. 63].

IT IS SO RECOMMENDED.

September 1, 2022                            Shiva V. Hodges
Columbia, South Carolina            United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[5] Plaintiff's citation to *Craddock*, 533 Fed. App'x 333, does not assist him. In this case, the court considered whether the plaintiff had plausibly stated a claim for age discrimination to survive the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a different standard than that presently before the court.

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).